**Melvin R. WILCOX, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–17634.**

Court of Criminal Appeals of Oklahoma.

Feb. 26, 1973.

Rex J. Givens, Lawton, for appellant.

Larry Derryberry, Atty. Gen., Michael Cauthron, Asst. Atty. Gen., Charles F. Alden, III, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Melvin R. Wilcox, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Comanche County, Case No. CRF–72–229, for the offense of Robbery With Firearms. His punishment was fixed at five (5) years imprisonment and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Troy Pyles testified that on March 31, 1972, he was on active duty with the National Guard stationed at Ft. Sill. That evening, he and two other soldiers went to the Palm Gardens and "decided to get a few beers." A person, whom he identified in court as the defendant, approached their table and offered to take them to a couple of places where they might find some "chicks." They left the Palm Gardens in the defendant's car, a brown 1961 Corvair. They went to Dino's and the Doll House and, finding no action there, the defendant agreed to take them to another night club. The defendant stopped near an apartment house and told them to play the radio and he would be back shortly. At approximately 8:30 p. m., the defendant returned with an unidentified male subject. They got in the car and drove around behind the apartments. The unidentified subject told them to give them their money, pulled a gun and fired one shot. The defendant grabbed Pyles by the coat pocket and told him to give him the money. He handed the defendant his wallet and the defendant took the money out of it. The three soldiers were ordered to get out of the car and to lie on the road. As the car drove away, he observed the license tag number, CM 2301. He testified that earlier in the evening, defendant had told them that he used to be in the same battery they were presently in, ATC, A–1.

William Kerns testified that on March 31, 1972 he was on temporary duty with the National Guard at Ft. Sill. His testimony as to the robbery did not differ substantially from that of Witness Pyles. He identified the defendant as being one of the robbers and stated that a total of Six Hundred Forty-six Dollars ($646.00) was taken in the robbery.

Officer Mahaffey testified that he arrested the defendant on April 1, 1972. The defendant was working on a brown Corvair, Tag No. CM 2301. Three Hundred Nineteen Dollars and Forty cents ($319.40) in cash was found on the defendant's person.

Sergeant James Cox testified that he was a Drill Sergeant with Alpha 1, ATC at Ft. Sill. He testified that the defendant was formerly a trainee in the same battery.

For the defense, Robert Cooper testified that the defendant spent the evening of March 31 with him and his wife. He was with the defendant from 6:30 p. m. until they went to bed at approximately 1:00 a. m. The defendant was never out of his sight for more than several minutes.

The testimony of Deborah Cooper did not differ substantially from that of her husband.

The defendant testified that he received an undesirable discharge from the Army on March 23 or 24. He spent the evening of March 31 with the Coopers as he was

preparing to leave for his home in Washington the following morning. He loaned his car to a person he met in the stockade named McKestry that evening. He testified that the money found on his person was money he received from the Army and money sent to him by his father.

◼ The first proposition asserts that the defendant did not have counsel at his prearrest lineup nor did he effectively waive the same. We are of the opinion that this proposition is without merit. Prior to the trial, the trial court conducted an evidentiary hearing concerning the in-court identification. Detective Connelly testified at the hearing that he advised the defendant of his rights prior to the lineup and that the defendant signed a lineup waiver. Said waiver was introduced into evidence.

Defendant testified on direct examination as follows:

"[By Mr. Givens] Q. And then it was the next morning that you went through the line-up?

"A. Yes.

"Q. Did you read this waiver before you signed it?

"A. Yes, sir.

"Q. You did sign the waiver, right?

"A. Yes.

"Q. Did you think it was important to have an attorney? Did anyone advise you to the fact that you really should have an attorney present?

"A. No.

"Q. They just told you you could have one if you wanted it?

"A. Yes, sir." (Tr. 37–38)

Defendant further testified on cross-examination as follows:

"[By Mr. Wisener] Q. You did understand that when you signed that waiver that you did have a right to an attorney before you held the line-up?

"A. Yes, sir.

"Q. And you told the detectives that you didn't want an attorney?

"A. Yes, sir." (Tr. 39)

◼ The second proposition contends that the lineup was not held in accordance with the guidelines set forth by this State in Thompson v. State, Okl.Cr., 438 P.2d 287. This proposition is well taken. The evidence at the evidentiary hearing adduced that the defendant was the only person in the lineup of his age and identification.

◼ The final proposition asserts that the court abused its discretion in finding that defendant was identified from an independent source other than the lineup. We are of the opinion that the trial court did not err in considering the totality of the circumstances in ruling that the in-court identification was not tainted. At the evidentiary hearing, Witness Kerns testified as follows:

"[By Mr. Wisener] Q. Now, will you —can you—are you basing your identification here today solely upon your memory that night of March 31, 1972?

"A. Yes.

"Q. Are you letting anything influence you or suggesting to you in making your identification here today?

"A. No, not other than what we stated before in the previous question.

"Q. What do you mean? Would you clarify yourself?

"A. It is based on identification and my memory on the night of March 31st.

"Q. And you did view a line-up at the police station?

"A. Yes.

"Q. Did that in any way influence you in making your identification here today?

"A. Well, my memory from the night of the 31st influenced picking out the Defendant.

"Q. I know, but can you identify the Defendant without relying on anything that happened at the line-up?

"A. Yes.

"Q. You can identify him without relying on anything that happened at the line-up—did the line-up have any influence on you making your identification here today whatsoever?

"A. I don't know what you mean.

"Q. Well, anything at the line-up influence you in making your identification here today.

"A. No." (Tr. 3–4)

In response to questions propounded to the witness by the court, the witness testified as follows:

"THE COURT: That's not what I asked you. It hasn't got anything to do with that. I want to know would you have made the same identification of this man, this Defendant today,—

"A. If I didn't see him in the line-up?

"THE COURT: If you had not seen him in the line-up.

"A. Yes.

"THE COURT: In other words, your memory did not need refreshing that much, is that what you are telling me?

"A. Yes.

"THE COURT: What you mean when you say refreshed is that you recollected seeing him, is that correct?

"A. Yes.

"THE COURT: Had you forgot what he looked like?

"A. No.

"THE COURT: All right. One other question, had you seen any pictures of this man before the line-up?

"A. No.

"THE COURT: Had anyone told you anything about who would be in the line-up?

"A. They just said there would be four guys there.

"THE COURT: They said four guys?

"A. Yes.

"THE COURT: Did they tell you what their nationality or color was?

"A. No.

"THE COURT: Tell you what they looked like?

"A. No.

"THE COURT: Anything about their age?

"A. No.

"THE COURT: How long were you in the Defendant's company on the night of the robbery?

"A. Between an hour and an hour and a half." (Tr. 11–12)

Witness Pyles testified as follows:

"[By Mr. Wisener] Q. Did you pick him out of the line-up?

"A. Yes, sir.

"Q. Are you letting the line-up influence you in any way in making your identification here today?

"A. I don't understand, sir.

"Q. Well, if you had not had the line-up, would you be able to identify the Defendant today?

"A. Yes, sir.

"Q. Did you get a good look at the Defendant when you was robbed?

"A. Yes, sir.

"Q. How long was you with him before you was robbed?

"A. About an hour and a half." (Tr. 17)

At the conclusion of the hearing, the trial court made a finding that the witnesses' identification came from an independent source other than the lineup. The trial court stated:

"* * * [T]he court's finding in this respect does take into consideration the various factors required by Thompson v. State; that is, the opportunity to observe the alleged criminal act and testimony of these two was that they had been in the presence of the Defendant about an hour and a half, been with him under conditions suitable to observe him and there apparently was no discrepancy that the court could see between the pre-line-up description given and the actual description of the Defendant. Further there

was no identification prior to the line-up of another person and was no identification by picture of the Defendant prior to the line-up of another person and was no identification by picture of the Defendant prior to the line-up and had been no failure to identify the Defendant on a prior occasion. The lapse of time of approximately three to four days was not any deterrent in this situation to an actual identification and the Court knows of no other matters relevant to consider which would have had any bearing. * * *" (Tr. 40)

We concur with the trial court's finding that the in-court identification was not tainted considering the totality of the circumstances. The judgment and sentence is, accordingly, affirmed.

BLISS, P. J., and BRETT, J., concur.